FILED
CLERK
9/3/2013 2:50 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAVID POWELL,

                    Plaintiff,

-against-

DANIEL MURPHY, badge no. 5040, individually
and in his official capacity, ROBERT SUPPA,
badge no. 1359, individually and as a detective of the
Suffolk County, N.Y. Police Department; OFFICER
TRUESDELL, badge no. 1349, individually and in his
official capacity, EILEEN O'CONNELL, individually
and COUNTY OF SUFFOLK, N.Y.,

                    Defendants.
----------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
11-CV-2561 (ADS) (ETB)

**APPEARANCES:**

**Arthur V. Graseck, Jr.**
*Attorney for the Plaintiff*
99 Meredith Lane
Oakdale, NY 11769

**Paul J. Margiotta, Acting Suffolk County Attorney**
*Attorney for the Defendants Daniel Murphy, Robert Suppa, Officer Truesdell and County of Suffolk*
100 Veterans Memorial Highway
Hauppauge, NY 11718
      By: Brian C. Mitchell, Assistant County Attorney

**PETROCELLI & CHRISTY**
*Attorneys for the Defendant Eileen O'Connell*
217 Broadway, Suite 505
New York, NY 10007
      By: Peter Basil N. Christy, Esq., of Counsel

**SPATT, District Judge.**

      On May 26, 2011, the Plaintiff David Powell ("the Plaintiff") commenced this

action against (1) the Defendants Daniel Murphy ("Murphy"), Robert Suppa ("Suppa")

and Donald Truesdell ("Truesdell"), individually and in their official capacities as officers of the Suffolk County Police Department; (2) the Defendant Eileen O'Connell ("O'Connell"), individually; and (3) the County of Suffolk ("the County") (collectively, "the Defendants"). Pursuant to 42 U.S.C. §§ 1983, 1988 and the Fourth Amendment to the United States Constitution, the Plaintiff claims that the Defendants Murphy, Suppa, Truesdell and the County violated his Fourth Amendment rights to be free from false arrest and malicious prosecution. The Plaintiff also brings a supplemental claim under the common law of the State of New York against the Defendant O'Connell for false arrest and malicious prosecution.

Pending before the Court is the joint motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 by Murphy, Suppa, Truesdell and the County. They allege that they are entitled to summary judgment because (1) probable cause existed to arrest the Plaintiff based on the sworn statement of O'Connell; (2) they are entitled to qualified immunity as there existed "arguable" probable cause to charge the Plaintiff; (3) Truesdell is entitled to absolute witness immunity; and (4) the Plaintiff cannot recover against the County under § 1983, since he lacks evidence that a municipal custom and/or policy caused a violation of his civil rights.

Also pending before the Court is O'Connell's motion for summary judgment. According to O'Connell, summary judgment should be granted in her favor because the Plaintiff cannot establish (1) that O'Connell initiated the criminal legal proceeding against him; (2) that O'Connell lacked probable cause; and (3) that there was actual malice on the part of O'Connell.

For the reasons that follow, the Court grants both motions for summary judgment in favor of the Defendants.

**I.      BACKGROUND**

Unless otherwise stated, the following facts are drawn from the exhibits accompanying the Defendants' motions for summary judgment, the Plaintiff's opposition papers and the Defendants' replies. The facts are construed in the light most favorable to the Plaintiff as the nonmoving party.

O'Connell is a forty-two year old nurse and mother of two children, a ten year old and a nine-year old. (O'Connell Decl., ¶ 3.) She and her children reside at 249 Astor Drive, Sayville, New York, which is a residential neighborhood with other families with children. (O'Connell Decl., ¶ 3.) O'Connell has worked as a nurse for more than twenty years, and has worked as a nursing instructor for approximately seven years. (O'Connell Decl., ¶ 3.)

On September 26, 2010, at about 11:00 a.m., O'Connell was sitting outside grading papers on a chair on the front porch of her home, which was elevated above the street. (O'Connell Decl., ¶ 4.) At about that time, she observed a white commercial van pull up and park in front of her house. (O'Connell Decl., ¶ 4.) She further observed the Plaintiff inside the van with his hands down in the area of his pants and moving one of his hands up and down. (O'Connell Decl., ¶¶ 2, 4.)

In order to confirm what she was observing, O'Connell came down from her porch, walked through her garden and peered through some sparse bushes at the edge of her property, which separated her from the van. (O'Connell Decl., ¶ 4.) Upon closer observation, O'Connell alleges she saw the man manipulating his erect penis with his

hand and that she heard "moaning or grunting noises." (O'Connell Decl., ¶ 5.) O'Connell believed the Plaintiff was masturbating. (O'Connell Decl., ¶ 2.) At this point, O'Connell wrote down the license plate number of the van on one of the papers she had been grading and ran to the back of her house, where her children were playing. (O'Connell Decl., ¶ 5.) She brought her children inside the house and locked the door. (O'Connell Decl., ¶ 5.)

O'Connell called her friend and neighbor, the Defendant Murphy, who was a police officer for the Defendant County, and asked him what she should do. (O'Connell Decl., ¶ 5.) Murphy advised that she call 911 to report what she observed. (O'Connell Decl., ¶ 5.) Based on Murphy's advice, O'Connell called 911 to report the incident and provided the 911 operator with the license plate number of the van. (O'Connell Decl., ¶ 5.) O'Connell claims that at the time, while she thought the conduct she observed and believed to be masturbation in a van on a public street was "wrong," she had no knowledge of the law and/or whether the conduct was a crime. (O'Connell Decl., ¶ 6.)

Approximately two days later, Murphy and his partner visited O'Connell at her home to investigate the incident. (O'Connell Decl., ¶ 6.) Allegedly afraid that the Plaintiff might come back to confront her and her family, O'Connell was uncertain as to whether to file an official complaint. Murphy advised the Plaintiff that she should proceed forward with her report and that official authorities would determine what would follow. (O'Connell Decl., ¶ 6.) Following Murphy's advice, O'Connell signed a written statement, taken by Murphy, detailing what O'Connell had observed. (O'Connell Decl., ¶ 6; O'Connell Mot., Ex. B.) In her sworn written statement, O'Connell alleged that the

4

Plaintiff was masturbating in front of her house "where anyone could see him." (O'Connell's Mot., Ex. B.)

However, according to the Plaintiff, O'Connell falsely swore that she heard moaning and saw the Plaintiff masturbating where anyone could see him when this, in fact, was not the case. (Powell Aff., ¶¶ 4, 9.) In this regard, the Plaintiff takes issue with the phrase "where anyone could see him." He suggests that O'Connell could not have been a casual passerby, since (1) she admitted that she observed the Plaintiff from behind the bushes about five or six feet away from the van and (2) she stated that she did not think the Plaintiff saw her. (Powell Aff., ¶¶ 10–14.)

On September 28, 2010, at approximately 11:47 p.m., the Plaintiff was arrested by Murphy. (Mitchell Aff., Exs. A, C.) Prior to his arrest, the Plaintiff admitted to Murphy that he was the operator of the white van that O'Connell had observed and that he was alone in the van in the Sayville area about 11:00 a.m. on September 26, 2010. (Mitchell Aff., Ex. C.) The Plaintiff further admitted that he had exposed his penis, allegedly so that he could urinate in a cup. (Mitchell Aff., Ex. C.) Apparently, the Plaintiff frequently operated his van in Suffolk County residential communities as part of his occupation as a salvager and/or junk and/or scrap metal collector and, during the course of conducting this business, he had a custom of urinating in a container which he kept within his van specifically for that purpose. (O'Connell 56.1 Statement, ¶¶ 10, 11.)

On September 29, 2010, the Defendant Suppa, a police detective for the County, prepared a Misdemeanor Information charging the Plaintiff with one count of public lewdness, in violation of New York State Penal Law ("NYSPL") § 245.00(a), for exposing his private parts in public. (Mitchell Aff., ¶ 2, Ex. A.) This charge was based

on the sworn written statement of O'Connell regarding the actions of the Plaintiff, as well as the statement of Murphy regarding the Plaintiff's admission that he was the owner of the van and had his penis exposed while he was parked in front of O'Connell's home. (Mitchell Decl., ¶¶ 4, 6, Ex. A.)

Nevertheless, the Plaintiff contends that Suppa initiated this Misdemeanor Information knowing there was no probable cause and knowing that O'Connell was not a casual passerby. (Powell Aff., ¶ 15.) According to the Plaintiff, Suppa and Murphy must have been aware that "public lewdness, under applicable law, could be committed in a motor vehicle only if the allegedly lewd conduct could be observed by a casual passerby." (Powell, Aff., ¶ 15.) In this regard, the Plaintiff alleges that Murphy induced O'Connell to include the phrase "where anyone could see him" in her sworn written statement so that the Plaintiff could be charged with public lewdness, even though the phrase was allegedly false, since the Plaintiff claims no one would have been able to see him partially undressed unless the person secretly spied on him as O'Connell did. (Powell Aff., ¶¶ 16–17.)

The Plaintiff was prosecuted by the Suffolk County District attorney for violation of NYSPL § 245.00(a) and, in March and April of 2011, a jury trial of the matter was conducted and held in the Suffolk County District Court, before the Honorable John Andrew Kaye. (O'Connell 56.1 Statement, ¶ 21.) At the criminal trial, the Plaintiff argued that that he did not violate NYSPL § 245.00(a) because at the time of the incident, he was not intending to be observed, as made evident by the fact that he parked his van in a private place on the side of the road in a secluded area. (O'Connell Mot., Ex. C1, pgs.

44, 45; O'Connell Mot., Ex. C4, pgs. 21, 22.) The criminal trial resulted in a jury acquittal of the Plaintiff. (O'Connell 56.1 Statement, ¶ 22.)

The Plaintiff alleges that, in connection with the abovementioned prosecution of his criminal case, the Defendant Truesdell, also a police officer for the County, took photographs of the interior of the Plaintiff's van. (Powell Opp., pg. 4.) According to the Plaintiff, one of the photographs that Truesdell took of the van that was later admitted into evidence at the criminal trial revealed a cut off water bottle in the vehicle, which the Plaintiff had claimed he used to urinate in. (Powell Aff., ¶ 22; O'Connell Mot., Ex. C3, pgs. 44, 49.) However, at the criminal trial, Truesdell allegedly testified that he searched the Plaintiff's van, photographed its contents and discovered no cut off cup in the van. (Powell Aff., ¶ 21.)

On May 26, 2011, following his acquittal, the Plaintiff commenced this civil action against the Defendants claiming he was falsely arrested and maliciously prosecuted in violation of his Fourth Amendment rights. In this regard, the Plaintiff alleges that he was arrested without probable cause. The Plaintiff also alleges that he suffered damages from being incarcerated including loss of time from his usual activities; loss of liberty; suffering; fright and emotional distress

In addition, the Plaintiff asserts that the Defendant County authorized and condoned the conduct of the individual Defendants Murphy, Truesdell, and Suppa. According to the Plaintiff, the County (1) failed to train, discipline and control the defendants; (2) failed to implement proper procedures, guidelines and policies regarding the duty of police personnel to protect persons from false/malicious allegations; and

(3) allowed and condoned the abuse of citizens by police in order to avoid the powerful police union.

## II.     DISCUSSION

**A. Legal Standard on a Rule 56(a) Motion for Summary Judgment**

It is well-settled that a motion for summary judgment under Fed. R. Civ. P. 56 may be granted by the Court only if the evidence presents no genuine issue of material fact. If no such issue of material fact exists, then the moving party is entitled to judgment as a matter of law. Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Fed. R. Civ. P. 56(c). However, the Court must endeavor to resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion for summary judgment. Anderson, 477 U.S. 242, at 247–48.

Once a party moves for summary judgment, the non-movant must come forward with specific facts showing that a genuine issue exists to avoid the motion being granted. West-Fair Elec. Contractors v. Aetna Cas. & Surety Co., 78 F.3d 61, 63 (2d Cir. 1996); see also Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed. R. Civ. P. 56(e)). Typically, a genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see Vann v. New York City, 72 F.3d 1040, 1049 (2d Cir. 1995). In addition, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

**B. As to the Plaintiff's § 1983 and Fourth Amendment Claims against the Individual Defendants Suppa, Murphy and Truesdell**

In this case, the Plaintiff's brings a cause of action under 42 U.S.C. §§ 1981 and 1983 against the individual Defendants Suppa, Murphy and Truesdell for false arrest and malicious prosecution in violation of the Fourth Amendment. According to the Plaintiff, Suppa, Murphy and Truesdell acted under color of state law when they arrested him and prosecuted him for violation of NYSPL § 245.00(a).

"In New York, the claim colloquially known as 'false arrest' is a variant of the tort of false imprisonment, and that tort is used to analyze an alleged Fourth Amendment violation in the § 1983 context." Ostroski v. Town of Southold, 443 F.Supp.2d 325, 334 (E.D.N.Y. 2006). To prevail, a plaintiff must prove four elements: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement, and (4) the confinement was not otherwise privileged." Broughton v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975), cert. denied, 423 U.S. 929, 96 S. Ct. 277, 46 L. Ed. 2d 257 (1975) (internal citations omitted). The only element in dispute in the instant case is the last element— that is, Suppa, Murphy and Truesdell contend that the arrest was privileged as a matter of law because it was supported by probable cause.

Of importance, even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he or she can establish that an 'arguable probable cause' to arrest." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004). "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b)

9

officers of reasonable competence could disagree on whether the probable cause test was met.'" Id.

With respect to the Plaintiff's malicious prosecution claim, a plaintiff must allege all the elements of malicious prosecution under state law. See Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002); see also Janetka v. Dabe, 892 F.2d 187, 189 (2d Cir.1989) ("A claim of malicious prosecution brought pursuant to section [ ] 1983 . . . is governed by state law in the absence of federal common law."). "To state a claim under New York law for the tort of malicious prosecution, a plaintiff must show: (1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). Thus, as with a false arrest claim, the existence of probable cause serves to defeat a claim of malicious prosecution in both state and federal proceedings.

In addition, to satisfy the fourth element requiring malice, a plaintiff need not "prove that the defendant was motivated by spite or hatred." Nardelli v. Stamberg, 44 N.Y.2d 500, 502–03, 375 N.E.2d 29, 404 N.Y.S.2d 73 (1978). Rather, a plaintiff must show that the defendant "commence[d] a criminal proceeding 'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" Maskantz v. Hayes, 39 A.D.3d 211, 215, 832 N.Y.S.2d 566, 570 (1st Dep't 2007) (quoting Nardelli, 44 N.Y.2d at 502–03).

Also of importance, a plaintiff's acquittal by a jury does not conclusively establish that probable cause did not initially exist when the plaintiff was arrested. "When determining whether probable cause exists courts 'must consider those facts

available to the officer at the time of the arrest and immediately before it.'" Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002) (quoting Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996)). See also Anderson v. Creighton, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) ("The relevant question . . . is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Weyant, 101 F.3d at 852 (citing Dunaway v. New York, 442 U.S. 200, 208 n.9, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979)). Moreover, when an arresting officer has been advised of a crime by a person who claims to be the victim and who it seems reasonable to believe is telling the truth, he typically has probable cause to effectuate an arrest. Singer, 63 F.3d, at 119.

In the current case, the Plaintiff asserts that there was no probable cause for his arrest for pubic lewdness pursuant to NYSPL § 245.00(a). In this regard, NYSPL § 245.00(a) provides:

> A person is guilty of Public Lewdness when he intentionally exposes the private or intimate parts of his body in a lewd manner or commits any other lewd act (a) in a public place, or (b) in a private premises under circumstances in which he may readily be observed from either a public place or from other private premises, and with the intent that he be so observed.

The Plaintiff contends that his arrest was maliciously caused by Suppa and Murphy when they knowingly relied on the allegedly false sworn written statement of O'Connell that

11

the Plaintiff's actions were carried out in a place where someone casually passing by could see him.

However, the Court finds that the Defendants Suppa and Murphy have established, as a matter of law, that probable cause existed. Here, it is undisputed that the Plaintiff exposed his penis while sitting in the driver's seat of his van. The van was parked in front of O'Connell's home, which is located in a residential neighborhood. O'Connell could see the Plaintiff from her porch and, upon getting within five to six feet of the van, observed the Plaintiff engaging in activity that appeared to her to be masturbation. O'Connell reported this incident to the Suffolk County Police Department and filed a sworn written statement in support of her claims. Further, while the Plaintiff denied masturbating, he nevertheless admitted to Murphy that he did park his van in front of O'Connell's home and proceeded to urinate in a cup, which involved him exposing his penis and shaking it.

Thus, given O'Connell's sworn statement and the Plaintiff's own admissions, Murphy and Suppa clearly had probable cause when they arrested the Plaintiff and charged him with public lewdness in violation of NYSPL 245.00(a). Of importance, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. New York City Transit Auth., 941 F.2d 119, 128 (2d Cir. 1991). This is because, "[i]t is up to the fact finder to determine whether a defendant's story holds water, not the arresting officer." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir.1989). Thus, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that

information." Bernard v. United States, 25 F.3d 98, 103 (2d Cir. 1994). Indeed, in this case, although a jury ultimately acquitted the Plaintiff of the charge, presumably because the prosecution failed to prove that he had the intent to be observed, there is no reason that Murphy and Suppa were required to believe the Plaintiff's assertion that he did not intend for anybody to observe him while he was sitting in his parked car on a residential street with his penis exposed.

Further, to the extent that the Plaintiff attempts to create a material issue of fact by arguing that Murphy and Suppa somehow should have known that O'Connell's statement was false, the Court finds that argument without merit. In this regard, "[s]exual acts performed in parked cars on public streets may be prosecuted as public lewdness when the circumstances are such that the vehicles may be considered a 'public place'–in other words, when the objective circumstances establish that the lewd acts committed there can and likely would be seen by the casual passerby." People v. McNamara, 78 N.Y.2d 626, 636, 585 N.E.2d 788, 578 N.Y.S.2d 476 (1991). Here, the Plaintiff suggests that O'Connell could not have been a casual passerby since she snuck up behind her bushes and spied on him. Nevertheless, the fact that O'Connell was able to plainly observe the Plaintiff from five to six feet away through bushes suggests that the Plaintiff's conduct would have been readily observable by any person walking or driving down the street in the residential community. In addition, O'Connell first observed the Plaintiff from her porch, indicating that anyone living at or visiting one of the neighboring homes would most likely be able to see the Plaintiff, as well.

Lastly, the Plaintiff contends that unlike O'Connell, a casual passerby would not have been in hiding and therefore the Plaintiff would have seen him or her approaching.

13

As a result, the Plaintiff argues that he would have been able to take the steps to prevent him or her from observing him while partially undressed. However, in the Court's view, this is speculative, since it's still possible that the Plaintiff might not have noticed a casual passerby until it was too late for him to take any steps to prevent him or her from observing his exposed penis.

In sum, the Plaintiff has offered no evidence to cast doubt on Suppa or Murphy's reliance on O'Connell's sworn written statement. See Singer, 63 F.3d at 119 ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."). Considering O'Connell's sworn statement and the Plaintiff's own admissions, the Court finds, as a matter of law, that Murphy and Suppa had probable cause to arrest the Plaintiff and to charge him with public lewdness. Therefore, the Court grants summary judgment in favor of Murphy and Suppa and dismisses the false arrest and malicious prosecution claims that the Plaintiff has brought against them pursuant to § 1983.

As to the Plaintiff's claim that the Defendant Truesdell testified falsely about the search of the Plaintiff's van, it appears to the Court that the Plaintiff is relying on mere conjecture, as he has provided no evidence to support this assertion. Indeed, in opposing the motion for summary judgment, the Plaintiff has not even offered the photograph of the van that allegedly contained the cut off bottle or the trial transcript of Truesdell's testimony.

More importantly, the Supreme Court has held that police officers testifying at judicial proceedings are entitled to absolute immunity from actions brought pursuant to

42 U.S.C. § 1983. Rolon v. Henneman, 517 F.3d 140, 145 (2d Cir. 2008). According to the Supreme Court, without such immunity, "[a] witness's apprehension of subsequent damages liability might induce . . . self-censorship," either by making witnesses reluctant to come forward in the first place or by distorting their testimony. Briscoe v. LaHue, 460 U.S. 325, 333, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983). Such self-censorship may "deprive the finder of fact of candid, objective, and undistorted evidence." Id. While the Second Circuit has carved out an exception in malicious prosecution cases for complaining witnesses, White v. Frank, 855 F.2d at 956 (2d Cir. 1988), when the witness is not the complaining witness, the Supreme Court's precedent establishing absolute immunity remains intact.

Here, since Truesdell was clearly not the complaining witness in the Plaintiff's criminal case, no exception applies and he is entitled to absolute immunity. As such, the Plaintiff's malicious prosecution claim must also be dismissed as against Truesdell.

Accordingly, viewing the facts in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has failed to establish that a material issue of fact exists with respect to any of his claims against officers Murphy, Truesdell and Suppa. Thus, the Court grants Murphy, Suppa and Truesdell's joint motion for summary judgment and dismisses the Plaintiff's claims against them.

**C. As to the Plaintiff's § 1983 Monell Claim against the Defendant County**

Having established that Murphy, Suppa and Truesdell did not violate the Plaintiff's constitutional rights, the Court finds that the Defendant County cannot be held liable under § 1983, regardless of whether the Murphy, Suppa and/or Truesdell acted pursuant to a municipal policy or custom. Matican v. City of New York, 524 F.3d

15

151,154 (2d Cir. 2008) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986)). Nevertheless, even if the Court had found that Murphy, Suppa and/or Truesdell did commit a constitutional violation, the Court would still find that the County is not liable under § 1983.

In this regard, in order to impose liability on a government entity, a plaintiff must first demonstrate "the existence of a municipal policy or custom." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d. 611 (1978). "The policy or custom need not be memorialized in a specific rule or regulation." Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) (citing Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870 (2d Cir.1992)). Instead, such municipal policies "include[ ] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). Also, in "limited circumstances," a municipality can be liable under § 1983 for its failure "to train certain employees about their legal duty to avoid violating citizens' rights. . . ." Id. For this reason, a policy, custom or practice of the entity may be inferred where "'the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" Patterson v. County of Oneida, N.Y., 375 F.3d 208, 226 (2d Cir. 2004) (quoting Kern, 93 F.3d at 44).

In this case, the Plaintiff has proffered no evidence in his opposition papers to suggest that any unconstitutional custom and/or policy exists. Rather, the Plaintiff contends that because three police personnel "openly engaged in grossly unlawful conduct" and were allegedly "doing an extra-legal favor for a friend of [the] defendant

16

Murphy," an inference should be drawn that the County condoned such behavior by its police officers. (Pl. Opp., pg. 4.) These allegations are unsupported by any evidence in the summary judgment record before the Court. Further, although the Plaintiff points to the First Circuit's decision in Bordanaro, et al. v. McLeod et al., 871 F.2d 1151 (1st Cir. 1989), as supportive of his position, he overlooks the point that Bordanoro also held that a plaintiff cannot establish a municipal policy or custom where, as here, he presents evidence concerning only a single event. Id. at 1156–57 (holding that "evidence of a single event alone cannot establish a municipal custom or policy" unless "other evidence of the policy has been presented and the 'single incident' in question involves the concerted action of a large contingent of individual municipal employees").

Consequently, as the Plaintiff complains of only one incident and the Court has already found that no underlying constitutional violation occurred, the County cannot be held liable pursuant to 42 U.S.C. § 1983. See Heller, 475 U.S. at 799. Therefore, the Court grants summary judgment in favor of the County.

**D. As to the Plaintiff's State Law Claims against O'Connell**

The Plaintiff has also brought state law claims for false arrest and malicious prosecution against O'Connell. In this regard, the Plaintiff alleges that O'Connell caused the Plaintiff's false arrest by falsely including in her sworn statement that the Plaintiff had his penis exposed and was allegedly masturbating "where anyone could see him" and that he could readily be observed by someone casually passing by.

However, as discussed above, the Court has already found that probable cause existed to arrest the Plaintiff and to charge him with public lewdness in violation of NYSPL § 245.00(a). The existence of such probable cause is a complete defense to a

claim of false arrest and a claim of malicious prosecution. Accordingly, given that (1) the undisputed facts of this case establish that there was probable cause and (2) the Plaintiff has failed to provide any evidence creating a material issue of fact, the Court also grants summary judgment in favor of O'Connell and dismisses the Plaintiff's New York State common law claims against her.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendants' motions for summary judgment are granted. All of the Plaintiff's claims are dismissed and the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
September 3, 2013

                                              */s/ Arthur D. Spatt*
                                              ARTHUR D. SPATT
                                          United States District Judge